Case number 22-1746, Jones Lang Lasalle Brokerage, Inc., Appellant v. 1441 L Associates, LLC, doing business as 1441 L Street Associates, LLC. Ms. McNally for the appellant, Mr. Laughlin for the appellee. Good morning, counsel. Ms. McNally, please proceed when you're ready. Good morning, may it please the court. I'm Laura McNally from the law firm of Morgan, Lewis, and Dacius, and I'm here representing Plaintiff Appellant Jones Lang Lasalle Brokerage, Inc. for JLL. The court below found that Defendant Appellee 1441 is a sophisticated, licensed actor in the real estate market that understood and consented to JLL's full representation. In addition, 1441 does not claim that JLL in any way harmed it or wronged it in connection with the transaction. Why are we here? Because the court below found 1441 is taking advantage, seeking to take advantage, of what the court found to be JLL's technical non-compliance with the statute at issue in order to avoid paying a commission that the court below found JLL rightfully earned. The problem with that analysis is that JLL did comply with the statute, and second, there is no need to void the complaint if this court views the statute differently. There are two reasons to reverse and remand here. First, the statute at issue only requires written consent. That written consent is present here. To the extent this court views the statute otherwise, second, there is no reason to void the commission. Now, turning first to the statute at issue, we're dealing with the Brokerage Act, Section 1703 of Section I. That first sentence of that statute requires that a licensee may act as a dual representative only with written consent of all clients to the transaction. Where do you say that written consent first happened? Written consent happened in three documents that are in the record. It is in the Exclusive Leasing Agreement. It is in the Registry. Maybe one at a time, if that's okay. So, I understand your argument on the leasing agreement, Exclusive Leasing Agreement, is that you attached a completely blank form that looks much like the one in the statute, but contains no information, no disclosure of what's happening, who's being represented, anything. And that that counts as written consent because the contract was signed? Correct. The document should be considered together. And in fact, we can consider it together, but it's completely blank, which I guess to me would imply that it's not implicated in the case. If I were looking at a contract and I would just think these are form contracts, they always attach them. It's not filled out. There's no identification of who you were representing in here. It's not just that it's not signed. You're supposed to show who you were representing. So, there's no information. So, I'm having a little trouble understanding. I get that it's incorporated, but it seems to me to be incorporated as a representation that there's no dual representation because otherwise this would have been filled out. What is wrong with that theory? So, again, I think that you have to consider the documents in combination. You have to consider the exclusive leasing agreement, which does have the exact statutory form disclosure, in combination with the Regis lease, in combination with the letter that 1441- Those all happen at different times, correct? Yes. And that, interestingly enough, 1441 does not contest that consent was provided. And in fact, in their appeal brief, they say that they adopt JLL's recitation of the facts. And the court below found that 1441 did, in fact, consent to JLL's- Right, but that was pretty late. So, if we then talk about the letter, the 2017 letter and the Regis lease, those are very, very late in the process, correct? I mean, the 2017 letter was more than a year after. Sorry, when- Maybe I can- Maybe it's not late. When did the dual representation commence? Does the record tell us that? The record is very clear that by December of 2017, that is the letter that 1441 sent to the JLL. No, I know that's when 1441 sent a letter, but that does not tell me when Jones-Lang started representing Regis. So, Jones-Lang was out-represented Regis from the beginning, is my understanding. From this very beginning. I don't think that there is a- It was a different team of- I understand that. That was representing Regis, a separate team that was representing 1441. So, it wasn't until this other client was on the verge of signing the lease after a long period when it wasn't able to get rented out that- So, it sounds like at least a year, year plus, this dual representation was going on without any disclosure to 1441, or are you telling me that it was disclosed early on? I don't think that 1441 claims that they were unaware of and did not consent. But the burden's on you to establish that consent was given. And so, if this was going on for well over a year, and then it wasn't until after way more than a year unable to rent this probably very expensive property, suddenly I've got a client. And by the way, we're representing- Another part of my company is representing them as well. 1441's back is kind of against the wall. If they object, then they could lose this rental. And so, how do I know that's not what was going on? They really, at that point, had no choice but to sign off on it because they wanted to get this property rented. I think that how we know that's not going on is that 1441 hasn't claimed that that was what happened. They haven't made any claim that JLL somehow told them too late or tied their hands. Yeah, but if we were to accept your theory of consent very late in the process at sort of a critical time, how would that not allow this sort of back-against-the-wall disclosure in other cases? So, under the circumstances here, I don't think that having knowledge even here, at least six months is reflected in the record, and very likely earlier, right? At the timing, 1441 never raised that as an issue again. They've never complained about that. JLL represented Regis in the deal. They've never brought up any claim that they were somehow harmed or skinned to. So, you didn't affirmatively move for summary judgment, right? The only question we have is the other side's summary judgment. Correct. So, then there's still an open issue as to whether, even if we accept your interpretation of the statute, such that let's just suppose hypothetically we do. I'm not saying we definitely will, but let's just suppose that we do. Then the question of whether the statute is complied with in terms of written consent just hasn't been resolved yet because the district court resolved the case on another ground that you think was erroneous. I think that that's a fair interpretation. I also think that the record and the way that the briefing has played out here, 1441 has adopted JLL's recitation of the fact on the appeal, which included the fact that 1441 provided written consent. So, then you might have an argument on if we were to go down this road and we were to have an argument on remand that everybody agrees that written consent was supplied. But at this point, the district court didn't address that issue. You didn't move for summary judgment. Correct. And in the district court's opinion, the district court does find that the record shows that consent was provided. And I think that... Which line are you referring to? Page 13 of the district court's opinion. Yeah. Does the district court find timely consent? I don't think that the statute provides for... You don't think it has any timing requirement? I don't believe that the statute by its terms does not have any type of timeliness. It doesn't incorporate the timeliness requirement from H, which is at the earliest practical time, but in no event later than the time when specific real estate assistance is first provided. Yes, but again, 1441 has not called into question that portion of the statute. Again, 1441... And I'm just trying to understand your theory of the statute is that they may not have raised the claims or preserved them in this case. I understand that argument. I'm just trying to understand your theory of what the statute means, because that's where you're asserting legal error on the part of the district court. And your theory of what the statute means is that the blank disclosure form counts as written disclosure. And we can look at the 2017 letter because there is no timeliness requirement on the written disclosure. I think that on the record here, we have to look at the blank form less than... But then if we have to also look at those two other things, then that's why I was adding in that then there is no time as a matter of law. Your position is that there's no particular time that this disclosure has to be made, other than, I guess, before someone signs on the dotted line at the very end of the whole representation. I think that in connection with subsection I, which is what we're dealing with here, there's no timeliness requirement. And that with respect to the previous sections, that wasn't something that the district court was deciding. I know. I'm just asking you your theory of the law, because you said we're talking about the district court's application of law. And so I'm just trying to understand yours. So is your position that there is no timeliness requirement for the disclosure of dual representation any earlier than, say, the 2017 letter? I have two reactions to that. My position is that in subsection I, there's no timeliness required. There is an earlier subsection of that same statute that has language along the earliest practical... Right. That's H. And that... What I'm trying to understand, you know so much more about this law than I do, is does H's time limit, because it's not supplanted by anything in I, govern disclosure of the dual relationship? That's all I'm asking. Okay. Okay. Because I refers back, refers to the disclosure in this section that doesn't use language in this subsection. Okay. So you're not disputing that legal thing is illegal requirement to have provided disclosure far earlier than you did. It's just that they have not, at least at this juncture, raised that argument. And that's not what the district court relied on. Is that where we are? Yes. I think that if that claim were to arise, we'd have to look more deeply into the discovery of that issue here. Some are just emotionally traumatized because of that discovery. So on the record before us, we have the three documents. I think that the December letter is the clearest acknowledgement of 1441's knowledge. But I don't know if the record proposes that it could have and likely was. Your interpretation of the phrase, as required by this section, is a look back to H? I think you can describe it more broadly. Okay. It could be section 1703. They could have used the word subsection. I think they do in a couple other places. But not here. But not here. It says section. And I think, too, that if you look at the statute, the first sentence of the statute says you need written disclosure. And we think that that's that. And then it's the question of what comes next. And the next sentence of the statute says that such written consent and disclosure as required by this section shall be presumed to have been given as against any client who signs a disclosure as provided in this section. So what that's telling us is that what comes next is going to give rise to this presumption of compliance. I think we have that part of your argument from the briefing. And I just wanted to make sure that when you look at the words as required by this section, your construction of as required by this section is looking back through the entire section, including especially subsection H. Yes. OK. A fair reason. Because a fair reason in other places in the statute, they do use the term subsection. OK. Let me make sure my colleagues don't have. Can I ask one more? I apologize. So the form letter, and it is in the blank form attached to the original leasing agreement, includes representations about maintaining confidentiality in the cases of dual representation. And while that is in the blank document, I did not see those assurances in either the 2017 letter or the Regis leasing agreement. Do you know if a confidentiality representation is required as part of any dual representation disclosure, or is that just part of this form? I get the presumption argument, but it seems like a pretty substantial thing, and I'm trying to figure out if that is also supposed to be the part of any written consent. So it's required in the form agreement in order to give rise to this presumption of compliance. And the other, I think, nuance with the statute there is that, in addition to giving rise to a presumption of compliance, it's to be given as against any client. So it's if a client is claiming that they were not informed and did not consent to this. We're in this world here where 1441 doesn't claim they didn't know about JLL's dual representation. So the statutory construct is to give the presumption of compliance. So this confidentiality assurance is not an independently required component of any written consent. It's only in this form. And if you get written consent some other way, you don't have to say boo to anybody about confidentiality. I think that there are fiduciary duty principles at work that require a company to, or a broker who's being a dual representative, to provide all kind of material relevant information, which arguably could be that you can't share confidential information, but that's not the claim that we're dealing with here.  I'm just trying to understand. Okay, thank you. We'll give you a little bit of time for rebuttal. And why don't we hear from the other side, Mr. Laughlin. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Alexander M. Laughlin of Odenfeldman & Pittleman on behalf of the appellee, 1431 Appellate Associates. Your Honors, the appellant has cited two reasons for reversing the district court summary judgment. One was that the statute only requires written consent and not written consent together. There's a saying that bad facts make bad law. And there's a number of bad facts against JLL today. JLL had consent. JLL had expressed knowledge of the dual representation. JLL signed a letter representing, confirming that dual representation. And, excuse me, 1441 signed a letter confirming that representation. And JLL brought the tenant to 1441L. The problem with the argument here about only requiring written consent is it requires written consent. And JLL did not. You're saying the failsafe in the statute is a requirement. I just want to tell you I'm highly skeptical of that. I want to make sure I understood listening to both. The argument is, can you hear me okay? Sir. The argument between you seems to me a straightforward legal question. Whether you just conceded what you conceded in your brief. There was written consent given by the lease exclusive listing agreement and the letter. Your brief concedes that. They had the written consent was given. Your sole argument, which is what the district court seemed to buy. Written consent has to be given in a certain form as shown in the statute. And as you say in your brief, if you don't have it. Disclosure that's conspicuous, printed in bold lettering, all caps underline it was separate box and there's no consent. I want to tell you and you can respond as you see fit. That's not what the statute says. The statute starts by making it absolutely clear a licensee may act as a dual representative only with written consent of all clients. You can see. That's been taken care of. There is a failsafe. Which you you hook up with the presumption. There's a presumption if you do all this foolishness. But that isn't the only way you can get or give written consent. The statute just doesn't say what you're saying. It says. But it says that when the safe harbor is not executed. Yeah, you can give these disclosures in combinations with other disclosures. But then provides specific exacting format. It is the district court's language as to what that other disclosure needs to look like. I don't see anything in the statute that says written consent must be given in a specific form. It's just not there. Says written consent in accordance with the statute and the statute further requires that the broker the brokers involved the licensees in this case comply with all provisions of applicable law, including the statute. No, it does not say written consent. It doesn't contact in connection with the failsafe. It does not say written consent can only be given. As shown by the point you say. It's not written consent unless it's what printed in bold letters, all capitals underlined and was separate box. That's not what the statute says. That's a failsafe issue. But when the failsafe is not available, what is the first one doesn't have to be available if you've otherwise got written consent and no one disagrees. You don't disagree. You both agree there is written consent. The question is, must it be given in a certain form? And I don't see it in the statute. In our view, in the district court's view, it does. Yeah, I understand. I read I read your brief and I read the district court's opinion and respectfully, I think you're wrong. That's not what the statute says. And you have to show me where it says that is not what the statute says. You can only give written consent in a single in a single way. And if you haven't used capitals and bold lettering, et cetera, and the district court was even saying, I think, quite honestly, in her opinion, this all seems pretty absurd to me. But I think this is the interpretation. Well, if I think that she she was mistaken, then her concern about this all being quite absurd has great meaning and force. It is absurd. You all have consent. It was full disclosure here. No one was confused in any sense of justice. There's no conceivable way they could be denied the commission. None. Question is whether or not this licensee should be held to the exact standard set forth. Well, we're fighting over what the statute means. And I'm telling you, I don't read the statute to require what you say. If the statute really said what you said in that first sentence, it said a licensee may act as a dual representative only with written consent as specifically described below, then you'd have a case. That is not what it says. And it says with the written consent of all clients and the transaction, then it goes on to talk about fail safes, which are other forms of written consent. And it talks about and in some instances will just presume you have it if you do certain silly things as a presumption. That works against your argument. The presumption assumes there are other ways that you can have written consent. That's where your district court and you both miss the language that's in the statute. Presumption works against you. We disagree, Your Honor. The district court doesn't see it that way to the extent that they want to rely on their other combined disclosures. It's not disputed that the rider to the listing agreement was not signed. It's not disputed that paragraph 35 of the lease doesn't include the language that cautions about the sharing of dual information. It's not disputed that the letter 17, 2017 letter doesn't say that. So are you focusing then on the language in two which says any disclosure which complies substantially in effect with the following shall be deemed in compliance with this disclosure requirement? Yes. And so you say this is not, I just want to make sure I'm understanding things. And so your argument is the signed agreements that they point to, at least the 2017 letter and then the Regis lease, do not comply substantially in effect with the following. No. And I think the recitation in the sample form of the dual agency and the evils that have to be disclosed about not sharing information on both sides of the transaction to say that that's in that sample form, but isn't part of this act and this licensure requirement strains credulity. But substantially in effect cannot mean identical to all this. So how do we know what substantially in effect? Whether or not if you have specific and exacting formatting in the legislation, whether it all cap box or whatever. And where in the statute does it say you must follow that form? It doesn't. It doesn't, that's right. It says if you don't utilize the safe harbor and you have to give combinations of these disclosures and combinations of other forms, you must give that in this format. And to say that you can substantially comply with the statute that's exactly down to this level of what needs to be disclosed constrains the idea. The whole point of having that language in subsection two would seem to be the, look, you don't have to follow every jot and tittle that we've laid out here. It just has to be substantially compliant. And that's very different from saying you got to use the big font. In particular, that requirement comes if you're combining the disclosure with other documents, but the 2017 letter wasn't combined with anything. So that language about fonts and bowls and boxes doesn't apply at all to the 2017 letter. What about the 2017 letter was not substantially in compliance with this section? Doesn't, pardon me, doesn't speak to, it doesn't say that we're not permitted to share information besides the broker side and the tenant side. It says that in the sample form. And we're being presented to- Is that what you argued to the district court, that these latter two disclosures were not in substantial compliance because they were, they omitted the confidentiality provision? Not on point, Your Honor. We argued that after we determined that the writer to the ELA had not been executed, we confirmed that neither party had to deliver that, and then we brought the summary judgment motion. We went through the combined other disclosures and searched them intensively, and none of those, when patched together, satisfy the requirements of subsection two, if you believe that that is what the D.C. Council included. Yeah, if you believe. And if I believe that what they meant to say was what they said in that first sentence, and that's the principal requirement, that is, can act as a dual representative with written consent and doesn't then follow it for saying the written consent must be given in the form shown below. That's not what it says. No, but in order to obtain the authority to act as a dual agent, you have to provide that consent in some format. And the statute requires in Title 4, Chapter 17 and Title 42. What would be required is what the district court did and what you concede, that as you look at the evidence in the case and you make a determination, given the information that was exchanged with the parties, do we have here something that, as a matter of fact, I would conclude is written consent. District courts do that all the time. You've conceded if you were district court judge, you would have said, yes, there was written consent. I'm saying to you as a judge on appeal, you've conceded the point because you don't need to do anything more. The district court doesn't need to find anything more than whether or not written consent was given. And you've conceded that. Conceded that on the nuance point, Your Honor, I set forth and agreed. Consent as given as required. I understand it's as required as you think the statute requires. And boy, that's not the way you'd write the statute if that's what the legislature was looking for. You have to give written consent and it can only be given in this way. If you don't give it in this way, there is no written consent. That's not what it says. If I may, Your Honor? Sure. The statute speaks to licensure of real estate professionals. And throughout that section, it speaks to compliance with this act. And one of the provisions that they're supposed to comply with is all applicable regulations of this statute and other law. And to the extent that if this court believes that the exact and specific requirements of that disclosure when combined together have to be given in that fashion, then that should end this issue. And then we can worry about the other consequences later, if I may. Thank you. Thank you, Mr. Levin. Appreciate it. Allie, we'll give you two minutes for rebuttal. Thank you, Your Honor. Just wanted to take a moment to address Judge Millett's question earlier. Forgive me if this is supposed to be rebuttal and we're coming back to answer your question, Your Honor. But I took a deeper dive on the limited record that we have in appeal. And it's not clear when 1441 entered the picture. So although the ELA was signed originally in June 2016. When 1441, you mean when Regis entered the picture? Regis entered the picture. My apologies. When Regis entered the picture. So although the ELA was signed in June 2016, and we know we have the letter starting in December 2017, it's not clear, at least from this record, when Regis entered the picture. To the extent, Your Honor, had some concerns regarding the timeliness of JLL's disclosure. I think first, 1441 hasn't claimed that the disclosures were in any way untimely. But also, the record doesn't suggest or support that they were untimely. Thank you. Anything further? No, I don't think so. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Millett, Edwards